**FILED**

UNITED STATES DISTRICT COURT
~~~~~~ ~~~~ ~~~~ MEXICO

NOV 1 4 2000

*K. Thurmmach*
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANDY G. SANCHEZ,

      Plaintiff,

vs.                                        Civ. No. 00-083 MV/RLP

KENNETH S. APFEL,
Commissioner of Social Security,

      Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.     Plaintiff, Andy G. Sanchez (Plaintiff herein), filed an application for Supplemental Security Income Benefits (SSI) on December 13, 1993, alleging disability due to a back injury and arthritis in his back and hands (Tr. 105-107, 134). During the course of these proceedings, his has also alleged disability caused by mental impairments, hypertension, and Hepatitis C. (See, e.g., Tr. 149-150, 152, 452). His application was denied at the first and second levels of administrative review, and by an Administrative Law Judge (ALJ herein). On November 5, 1996, the Appeals Council remanded with instructions to address specific deficiencies in the original ALJ's decision. A rehearing was conducted on February 4, 1998. A second ALJ denied Plaintiff's claim in a decision dated February 25, 1998. The Appeals Council declined review on December 17, 1999. Plaintiff has filed suit contesting the denial of his claim. The matter is now before the Court on Plaintiff's Motion to Reverse and Remand for rehearing.

---

[1]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.



**I.     Standard of Review**

2.     This Court reviews the Commissioner's decision to determine whether the record contains

substantial evidence to support the ALJ's findings, and to determine whether the correct legal standards

were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th

Cir.1994).    Substantial evidence is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.' " **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting

**Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).   In reviewing the

Commissioner's decision, the court cannot weigh the evidence or substitute its discretion for that of the

Commissioner, but I have the duty to carefully consider the entire record and make my determination

on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

3.     The Commissioner has established a five-step sequential evaluation process to determine if a

claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988).   If a claimant is determined

to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888

F.2d 706, 710 (10th Cir.1989).   The burden of proof is on the claimant through step four; the burden

of proof it shifts to the Commissioner at step five.   Id.

**II.     Issues Raised**

4.     Plaintiff seeks reversal and remand for additional proceeding, on the grounds that:

-      The ALJ's decision regarding his residual functional capacity is not supported by

       substantial evidence and is contrary to law, in that

       -      There is no "positive" evidence that Plaintiff can perform work at the medium

              level of exertion and

       -      The ALJ did not adequately consider Plaintiff's mental impairments; and

-      The vocational expert did not identify a vocationally significant number of jobs that

2

Plaintiff could perform at his retained functional capacity.

## II.    Vocational and Medical Facts

5.      Plaintiff was born on March 4, 1943, and has a 9th grade education. (Tr. 105, 138). He has work experience as a laborer, janitor and car detailer. (Tr. 128). He was homeless from approximately 1983 to 1993, eventually obtaining housing subsidized by Health Care for the Homeless in 1993. (Tr. 453, 90). He has a past history of drug abuse and alcohol abuse, and has been diagnosed as suffering from degenerative disc disease of the lumbo-sacral spine, osteoarthritis of multiple joints, hepatitis C, hypertension, depressive disorder NOS, atypical personality disorder with some antisocial features and probable attention deficit hyperactivity disorder. (Tr. 455-456, 158, 521, 581). Though sporadically employed, Plaintiff has not engaged in substantial gainful activity at any time relevant to this claim for SSI benefits.

## III.   Analysis

### A.      Plaintiff's physical residual functional capacity

6.      The ALJ found that Plaintiff retained the residual functional capacity for work at the medium exertional level, incorporating by reference the evaluation contained in the prior adverse decision dated July 25, 1995. (Tr. 18-19, referring to Tr. 534-548).   The prior decision, although acknowledging that a non-examining physician had indicated that Plaintiff could engage in medium level work, found that Plaintiff was limited to light level work[2] (Tr. 535).   There is substantial evidence to support a finding that Plaintiff can engage in light exertional work, which requires the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects

---

[2]"The Administrative Law Judge, giving the claimant the greatest possible latitude in interpreting the evidence of record, concludes that the claimant is unable to perform greater than light work . . ." (Tr. 540).

weighing up to ten pounds, and a good deal of walking, standing, or pushing and pulling when sitting
is involved.  SSR 83-10; 20 C.F.R. §416.967(b). (See, e.g., Tr. 137 , 89 - admitted ability to walk
long distances without problem; Tr. 453, admitted ability to lift 25 lbs.; Tr. 452-461, evaluation by
examining physician finding no limitation in ability to lift, carry, stand, walk, or sit.).

7.      The ALJ, relying on the testimony of a vocational expert ("VE" herein), found that Plaintiff
could perform the jobs of *Escort Driver* and *Delivery Driver of Rental Vehicles*.  (Tr. 20).  If these
jobs are in the light exertional range, the ALJ's error in assessing physical residual functional
capacity is harmless.  **Cf., Diaz v. Secretary of Health and Human Services**, 898 F.2d 774, 777
(10th Cir. 1990).

8.      In questioning the VE, the ALJ failed to specify an exertional range.  The VE, in listing jobs
Plaintiff could perform, did not identify those jobs by Dictionary of Occupational Titles (DOT)
number.  Those designations, however, are readily ascertainable.  Although several jobs other than
*Vehicle Escort Driver* and *Delivery Driver of Rental Vehicles* were mentioned, I will consider only
those two jobs, as they are the only ones referenced by the ALJ in his decision.

9.      *Escort - Vehicle Driver* DOT ¶919.663-022 :

> Drives vehicle equipped with warning lights and signs to escort trucks hauling
> mobile homes on public thoroughfares: Precedes escort and maintains specified
> distance between pilot vehicle and escort to provide warning to other motorists and
> to clear traffic at locations. Communicates by two-way radio with truck and other
> pilot vehicle drivers to coordinate changes in speed and route, emergencies, or traffic
> congestion.

These are, in essence, the job duties by the VE.  (Tr. 97).  This job is classified as sedentary, and
would therefore fall within Plaintiff's exertional capabilities. 20 C.F.R. §416.967(b).

10.     *Deliverer, Car Rental*, DOT ¶919.663-010

4

> Delivers rental cars to customers, and services them prior to delivery: Sweeps out and vacuum cleans interior of rental automobile. Washes windows and exterior of automobile, using water and other cleansing compounds and cloth. Regulates tire pressure and adds gasoline and oil. Adds water to battery and radiator. Delivers automobile to customer at specified pickup point. Collects rental payment and deposit from customer; and observes that customer reads and signs rental contract. May deliver new or used automobiles to customer from automobile dealership.

This job is classified as light, and would also fall within Plaintiff's exertional capabilities.

11.     Based on the foregoing, I find that the ALJ's error in classifying Plaintiff's physical residual functional capacity is not, in and of itself, grounds for reversal. There is substantial evidence that Plaintiff retains the residual functional capacity for work at the light exertional level, and the jobs identified by the VE fall within that range of exertional ability.

### B.     Plaintiff's mental residual functional capacity

12.     Dr. Hamilton, a physician who evaluated Plaintiff's physical condition in February 1994, felt that he might have significant problems with functioning secondary to chronic alcohol use, and recommended a psychiatric or psychometric evaluation. (Tr. 454, 458-459). Carlos Balcazar, M.D., a psychiatrist, evaluated Plaintiff on November 11, 1994, but failed to prepare a "Medical Assessment of Ability to Perform Work Related Activities ()." (Tr. 519-524). In evaluating Plaintiff's mental functioning, Dr. Balcazar found that Plaintiff communicated well, had good attention span, fair ability to concentrate, preserved remote and recent memory, the ability to perform simple mental arithmetic with "some difficulty," an inability to calculate serial "7's" and no indication of loose associations or delusional thinking. (Tr. 521). He arrived at the following diagnosis:

> Axis 1:          1. Alcohol abuse, in remission for the last five months, according to the patient.
> 2. Drug abuse, of short duration and presently in remission

5

| Axis II:  | Atypical personality disorder with some anti-social features |
|-----------|--------------------------------------------------------------|
| Axis III: | Chronic back pain. Probably osteoarthritis of multiple joints. Hypertension. |
| Axis IV:  | The psycho social stressors during the course of the last year have been moderate. |
| Axis V:   | The optimal functioning during the course of the last year has been poor. |

I think this man has adequate judgement to plan a work sequence. From a psychiatric standpoint he could use tools and materials for simple jobs as well as he could perform one or two step repetitive tasks at a competitive rate. I would not foresee difficulty in his interaction with coworkers and supervisory personnel.

(Tr. 521-522).

13.    The Appeals Council remanded this matter to the ALJ on November 5, 1996, because

The hearing decision did not address the representative's request for clarification of (Dr. Balcazar's) Axis V rating ("poor") when compared with the summary opinion (referring to Dr. Balcazar's report) or (the representative's) "lay opinion" that the claimant may have organic brain syndrome which required further development. (referring to a letter sent by Plaintiff's representative to the ALJ. Tr. 526).

(Tr. 575-576).

14.    Plaintiff's mental functioning was evaluated on two additional occasions, first by Marianne

Thompson, PhD., on October 2, 1995, and by Lawrence Goodline, PhD, on February 13, 1997.   Dr.

Thompson interviewed Plaintiff and performed three tests: The Wechsler Adult Intelligence Scale -

Revised (WAIS-R), the Wide Range Achievement Test - (reading) and the Minnesota Multiphasic

Personality Inventory -2 (MMPI). The MMPI is the only test relevant to this appeal. Dr. Thompson

found that Plaintiff's MMPI score was not valid, and that Plaintiff's responses suggested "over

reporting of problems, and careless response to items toward the end of the test." Explaining further,

Dr. Thompson stated:

Such over reporting of psychopathology may reflect: 1)"plea for help" to ensure that needs are not ignored, 2) conscious manipulation where litigation is involved or 3)

6

rather blatant attempt to distort responses for some situational reason.  <u>Individuals with genuine psychopathology who obtain this pattern would be so grossly and severely disturbed that it is unlikely they could complete the MMPI-2 in a consistent manner, yet an overall index of scores related to this factor indicated that he did endorse the items in a consistent manner.</u>

(Tr. 579-580). (emphasis added).

15.     Based on her evaluation, Dr. Thompson a "Medical Assessment of Ability To Do Work-related Activities (Mental)," in which she stated that Plaintiff retained a good ability to perform simple and detailed but non-complex job instructions, and fair[3] ability to relate to co-workers, deal with the public, use judgment, deal with work stresses, function independently, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situation, and demonstrate reliability.  (Tr. 583-584).

16.     Dr. Goodline examined Plaintiff a year and a half later, in order to evaluate his adaptive functioning over the prior year. Dr. Goodline interviewed Plaintiff, administered the WAIS-R, a test to measure intellectual functioning, contacted Plaintiff's social worker at Health Care for the Homeless and reviewed the reports of Drs. Hamilton, Balcazar and Thompson.  Dr. Goodline's "Medical Assessment of Ability To Do Work-related Activities (Mental)," indicated the following:

---

[3]Seriously limited but not precluded.

| Making Occupational Adjustments | | | | |
|---|---|---|---|---|
| | unlimited/very good | good | fair | poor or none |
| Follow work rules | | x | x | |
| Relate to co-workers | | | x | |
| Deal with public | | | x | |
| Use judgment | | x | | |
| Interact with supervisor | | | x | |
| Deal w/ work stresses | | | x | |
| Function independently | | x | | |
| Maintain attention/concentration | | x | | |

(Plaintiff's) primary limitation is probably in dealing with stress that in (sic) inevitably involved in social interaction, whether supervisors, other employees or clients. Here one notes his history of physical altercations and previous tendency to deal with stress by drinking. Impulsivity goes hand in hand with ADHD and there may remain a tendency to impulsivity, although Mr. Sanchez appears to recognize this tendency and is learning to cope with it more effectively than in the past.

(Tr. 600-601).

| Making personal-social Adjustments | | | | |
|---|---|---|---|---|
| | unlimited/very good | good | fair | poor or none |
| Maintain personal appearance | x | | | |
| Behave in an emotionally stable manner | | | x | |
| Relate predictably in social situations | | | x | |
| Demonstrate reliability | x | | | |

While there would probably be no problems with maintaining personal appearance . . . and his being reliable, one suspects that his ability to deal with people who are "socially challenging" (angry, irritable, unreasonable) is very limited and could well trigger maladaptive responses on his part.

(Tr. 600, 602).

8

17.     The ALJ found that Plaintiff retained the mental residual functional capacity for unskilled

work in a low stress environment with little or no contact with public, co-workers or supervisors.

(Tr. 18). In support of this finding, he stated:

> The results of his neuropsychological testing in October 1995 (Dr.
> Thompson) revealed an invalid profile on the MMPI due to over reporting of
> problems, and carelessness on the testing.  The doctor stated that the results of the
> claimant's testing suggested that he was making a conscious attempt at manipulation
> for litigation, or he was making a blatant attempt to distort his responses.

> The claimant has retained a residual functional capacity which supports
> unskilled exertionally medium work activities in a low stress environment which
> requires little or no contact with the public, coworkers, or supervisors. Nonexertional
> factors have not significantly altered this work capacity.   This conclusion is
> supported by the results of his consultative psychiatric evaluation performed on
> February 13, 1997 (Dr. Goodline), which identified that his primary limitations arise
> in the areas of dealing with the stress involved in social interactions.  That physician
> found that the claimant had good understanding for remembering and carrying out
> simple job instructions.  His neuropsychological evaluation performed on October
> 2, 1995, (Dr. Thompson) found no evidence of severe psychopathology.  Although
> the claimant appeared hyperactive, he demonstrated adequate attention and mental
> control  during his evaluation and testing, and his memory function was normal.
> That doctor found that the claimant was likely exaggerating his problems, and she
> recommended no particular functional restrictions on his activities.

> During his consultative psychiatric examination performed on November 11,
> 1994 (Dr. Balcazar), the claimant's memory was preserved, and his line of thought
> was goal oriented.  While the doctor found only fair concentration ability, and poor
> optimal functioning over the previous year on this Axis V rating, he indicated that
> the claimant retained the ability to perform simple, repetitive tasks at a competitive
> rate.  The reason for the doctor's opinion that the claimant was able to perform
> simple, unskilled work activities in spite of poor optimal functioning is unclear.
> However, the more recent evidence indicates that the claimant exaggerates his
> difficulties and may not have been motivated to improve his functioning (referring
> to Dr. Thompson's report).  The claimant has been able to work at short stints . . .
> He does not allege that he has had to leave any of those jobs because of mental
> problems on the job.

> He testified that he is attending classes for a general equivalency diploma, and
> although he stated that he is a slow learner, there is no evidence that he has not been
> successful so far in his studies.  I am aware that the claimant's attorney has indicated

> his "lay" opinion that his client has organic brain syndrome. (referring to Tr. 526).
> However . . . I must defer to the opinions of the professionals specifically trained in
> the evaluation of medical mental conditions, and I find no such diagnosis in the
> medical evidence.

(Tr. 18-19).

18.     The foregoing establishes that the ALJ considered the reports of the psychiatrist and

psychologists who evaluated Plaintiff's mental condition.   He properly resolved conflicts in the

medical evidence. **Richardson v. Perales**, 402 U.S. 389, 399 (1971); **Casias v. Sec'y of Health &**

**Hum. Serv.**, 933 F.2d 799, 801 (10th Cir. 1991).  Substantial evidence supports his finding as to

Plaintiff's retained mental residual functional capacity.

### C.     Testimony of the Vocational Expert

19.     The ALJ found that:

> Vocational expert opinion establishes that there have been jobs existing in
> significant numbers which the claimant has been able to perform.  Examples of such
> jobs are jobs as an escort driver, and a delivery driver of rental vehicles.  Those jobs
> are unskilled jobs involving little stress, and which require little or no contact with
> the public, co-workers or supervisors.

(Tr. 20) (emphasis added).

20.     The VE's testimony, however, does not provide support for all of the components of the

ALJ's findings.  As noted previously, the ALJ did not set out a clear hypothetical question for the

VE.[4]  What is clear, however, is that no testimony was elicited which would substantiate that the jobs

---

[4]The ALJ asked the VE if she had reviewed the file and heard the testimony. He then asked if she
had an opinion about what Plaintiff could do given his age ( 54), education (9th grade, working on a GED)
past work experience (light), psychiatric findings (variable ability, from fair to good, in following work rules
and using judgment; IQ level).  (Tr. 95-96).  The VE concluded such a person would be able to perform
unskilled work in the light to sedentary range.  (Tr. 96).  She added that working "at speed" would be a
stressor difficult for him to handle.  (Tr. 97).  On cross examination, she considered the impact of a "less than
satisfactory ability to relate" to the public, co-workers and supervisors.  (Tr. 100-101).

of escort driver and delivery driver of rental vehicles  involved  "little or no contact with . . . supervisors."

> Q:    Now, if we assume a less than satisfactory ability to relate to co-workers . . . would that impact of any of those jobs you've identified?
> A:    Well, the - - there's very few jobs that I've mentioned where you'd work in close contact. . . . The escort driver or deliverer, the contact would be very limited.
> * * *
> Q:    How about with supervisors?
> A:    Well, unskilled work is typically supervised closely.

(Tr. 100-101).

## IV.    Recommended Disposition

21.    Plaintiff's claim for benefits has been pending for almost seven years.  The Commissioner is not entitled to adjudicate a case "ad infinitum until he correctly applies the proper legal standard and gathers evidence to support his conclusion." **Sisco v. United States Dep't of Health & Human Servs.**, 10 F.3d 739, 746 (10th Cir.1993)(quoting **Thaete v. Shalala**, 826 F.Supp. 1250, 1252 (D.Colo.1993)). I recommend, therefore, that this case be remanded for an immediate award of supplemental security income benefits to Plaintiff, commencing as of December 13, 1993.

**Richard L. Puglisi**
**United States Magistrate Judge**

11